**SAGINAW TRANSFER COMPANY, Inc.,** Saginaw, Mich., et al., Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission, Washington, D. C., Defendants,

v.

**RAILWAY EXPRESS AGENCY, INCORPORATED,** Intervenor-Defendant.

Civ. A. No. 2964.

United States District Court,
E. D. Michigan, N. D.
March 10, 1970.

Rex Eames, Detroit, Mich., Roland Rice, Richard R. Sigmon, Peter T. Beardsley, R. Edwin Brady, Albert B. Rosenbaum, Martin Sterenbuch, William O. Turney, Francis W. McInerny, Harry J. Jordan, David A. Sutherland, Robert A. Peavy, Donald E. Cross, Washington, D. C., A. David Millner, William J. Hanlon, Newark, N. J., David Axelrod, Chicago, Ill., Gilbert Y. Rubenstein, Flint, Mich., Guy H. Postell, Frank D. Hall, Atlanta, Ga., for plaintiffs; Rice, Carpenter & Carraway, Washington, D. C., of counsel.

James H. Brickley, U. S. Atty., E. D. Mich., Detroit, Mich., for defendants.

John E. S. Scott, W. Gerald Warren, Detroit, Mich., for intervenor defendant.

Before O'SULLIVAN, Circuit Judge, THORNTON, Senior District Judge, and ROTH, District Judge.

## OPINION

ROTH, District Judge.

This is an action under section 205(g) of the Interstate Commerce Act, 49 U.S. C. § 305(g), section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and sections 1336, 1398, 2284 and 2321 through 2325, inclusive, of the Judicial Code, 28 U.S.C. §§ 1336, 1398, 2284 & 2321–2325, to enjoin, suspend and set aside orders of the defendant, Interstate Commerce Commission, entered June 3, August 12 and October 28, 1968, in its Docket No. MC-66562 (Sub-No. 2308TA), Application of Railway Express Agency, Inc., etc. By these orders, entered pursuant to section 210a(a) of the Interstate Commerce Act, 49 U.S.C. § 310a(a), the Commission temporarily authorized REA to perform motor express operations between approximately 4,500 points throughout the United States, almost all of which it heretofore has served as an express company and most of which it previously has been authorized to serve as a motor carrier of express.

Jurisdiction is conferred upon this Court by sections 17(9) and 205(g) of the Interstate Commerce Act, 49 U.S.C. §§ 17(9) and 305(g), section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and sections 1336, 1398, 2284, and 2321–2325, inclusive, of the United States Judicial Code, 28 U.S.C. §§ 1336, 1398, 2284, and 2321–2325. The United States of America was named as defendant pursuant to section 2322 of the Judicial Code, 28 U.S.C. § 2322.

The plaintiffs are motor carriers of property (and associations of such carriers), operating in interstate and foreign commerce, pursuant to operating authority issued by the defendant Commission. Thirty-eight of the plaintiffs are motor common carriers of general commodities operating generally over regular routes pursuant to certificates of public convenience and necessity issued by defendant Commission. Eight of the plaintiffs are motor contract carriers of specified commodities operating generally over irregular routes pursuant to permits issued by defendant Commission. Twenty-five of the plaintiffs are motor common carriers of general and specified commodities, moving in express service, operating over regular and irregular routes, pursuant to certificates of public convenience and necessity issued by defendant Commission.

Four of the plaintiffs are industry trade organizations representing motor carriers of property in interstate and foreign commerce. American Trucking Associations, Inc. is a federation of

state motor carrier associations and represents all types of motor carriers of property. The three conference plaintiffs (Regular Common Carrier Conference, Contract Carrier Conference, and Film Carrier Conference) are affiliates of American Trucking Associations, Inc., and represent their member motor carriers authorized to engage in particular types of transportation indicated by the conference names. Each of the associations frequently appears in proceedings before the defendant Commission and the federal courts on behalf of the motor carrier industry or the particular segment of that industry they represent. All of the plaintiffs were parties to one or both of the proceedings before the defendant Commission.

The carrier plaintiffs are actively engaged in operations under their certificates and permits issued by the defendant Commission, transporting general and specified commodities, in interstate and foreign commerce, throughout the contiguous United States, in direct line service and, in the case of the common carrier plaintiffs, in connecting line service. The plaintiffs have been regulated by the defendant Commission since the passage of the Motor Carrier Act, 1935, which is now Part II of the Interstate Commerce Act. (49 U.S.C. § 301 et seq.) The field in which they operate is one of limited entry and they are entitled to protection against new, nationwide competition authorized in disregard of the statutory standard and of the Commission's own rules governing the grant of motor carrier temporary authority.

In accordance with 28 U.S.C. § 2322, the United States of America is defendant, and as the Commission may intervene as of right, the Interstate Commerce Commission was joined as a defendant. Railway Express Agency, Incorporated, hereinafter referred to as REA, and a number of shippers have intervened in these proceedings. 28 U.S.C. § 2323.

REA, the applicant awarded temporary authority by the Commission in the assailed orders, operates in interstate and foreign commerce as an express company under Part I of the Interstate Commerce Act. (49 U.S.C. § 1, et seq.) In addition, REA operates under numerous certificates of public convenience and necessity issued by the defendant Commission under the provisions of section 207 of the Interstate Commerce Act (49 U.S.C. § 307), authorizing operations as a common carrier by motor vehicle, over regular routes, in interstate and foreign commerce, transporting general commodities moving in express service.

By application dated March 21, 1968, REA sought emergency temporary authority to perform motor carrier operations, as fully described in its application. The application was denied by order entered March 26, 1968, by the Commission, Temporary Authorities Board, and on March 27, 1968, REA petitioned for reconsideration. On April 3, 1968, the Commission reversed the Board and granted REA temporary authority for a period of 30 days.

The American Trucking Associations, Inc., affiliated conferences and member companies on April 16, 1968, and several other truckers on April 22, 1968, petitioned for reconsideration of the grant of emergency temporary authority, and REA replied on April 28, 1968. The truckers' petitions for reconsideration were denied by order of the Commission entered April 30, 1968. The emergency temporary authority was extended by orders several times.

In the meantime, by application filed April 9, 1968, REA sought corresponding temporary authority for a period of 150 days. Notice of the filing was published in the Federal Register of April 17, 1968, and numerous protests to the grant of temporary authority thereafter were filed by the American Trucking Associations, Inc., affiliated conferences, member companies and other truckers. On June 3, 1968, the Commission, Division 1, granted REA's application for a period of 90 days commencing no sooner

than July 2, 1968. Petitions for reconsideration were filed by several of the protestants, and REA replied. By order entered August 12, 1968, the Commission, Division 1, acting as an Appellate Division, denied the petitions. A further petition by ATA and allied protestants for reconsideration of the grant of temporary authority, to which REA replied, was denied on October 28, 1968.

An application for corresponding permanent authority to perform the considered motor carrier operations was filed by REA on May 29, 1968, and notice thereof was published in the Federal Register of November 23, 1968. Under section 9(b) of the Administrative Procedure Act, 5 U.S.C. § 558(c), the temporary authority granted by the orders assailed herein may be exercised by REA pending the Commission's determination of its application for permanent authority.

In view of the size and complexity of the permanent authority application and the degree of opposition to it, the time for its final determination and the effective period of this "temporary" authority may well extend several years in the future.

The Commission's power to grant temporary authority for operation as a motor common or contract carrier is set forth in section 210a of the Interstate Commerce Act, 49 U.S.C. § 310a. The provisions of paragraphs (a) and (c) of section 210a are as follows:

"(a) To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need, the Commission may, in its discretion, and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the Commission shall specify, but for not

more than an aggregate of one hundred and eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter.

\*      \*      \*      \*      \*      \*

"(c) Transportation service rendered under such temporary authority shall be subject to all applicable provisions of this chapter and to the rules, regulations, and requirements of the Commission thereunder."

The Commission's rules governing the filing, processing, and determinination of applications by motor common and contract carriers for temporary authority, adopted April 7, 1965, are published in Part 1131 of Volume 49, Code of Federal Regulations.

A single question is before this Court:

Was there a rational basis for the Interstate Commerce Commission temporarily to authorize REA to perform the considered motor carrier operations as a carrier of express?

The Commission found that, among other factors, REA predicated its request upon "the well-known crisis in the movement of small shipments, the circuitous, inefficient and increasing inadequacy of its traditional pattern of a [sic] line haul transportation resulting from curtailed rail passenger service, discontinuance of passenger train service and the elimination of mail carrying trains, and the cancellation by certain rail carriers of their joint agreements with REA in connection with the movement of traffic jointly by rail and motor service; \* \* \*" and that "such cancellations and discontinuance have resulted in REA having to conduct inefficient operations under its present authority, that it has suffered severe financial losses, and that this trend is continuing and is being aggravated by the inefficient manner of operation which REA is forced to conduct under its present authority; \* \* \* That unless the temporary authority sought is granted, REA will be faced with grave

financial adversity, *imperiling its ability to continue authorized operations and service to the public; * * * That * . * * the authority sought will not result in the entry by REA into areas not previously serviced; * * * That* an emergency situation exists with respect to the continuation of the express operations of REA and, *that to enable the provision of express service for which there is an immediate and urgent need to points in areas having no carrier service capable of meeting such need, such emergency requires the authorization of express service to the extent set forth herein; * * *"* (italics supplied.)

> Based on its findings the Commission ordered
>
> "* * * That applicant be, and is hereby granted temporary authority as a common carrier by motor vehicle, * * * to engage in the business of transportation by motor vehicle, in interstate or foreign commerce, of general commodities, moving in express service, from, to, and between the points and areas, and over the routes set forth in the application, * * *"

Traditionally railroad passenger service has been the mainstay of express service rendered by REA and, in fact, the Commission for many years treated REA as an agency of the railroads. The diminution in railroad passenger service has been progressing at an ever increasing rate, doubtless providing the basis for the recent policy of the United States Post Office department to remove first class mail from rail passenger trains. We cannot say that the Commission did not have a rational basis for concluding that the drastic curtailment of passenger train operations, (and the real threat of their virtual disappearance) and other factors involved in its findings, required, in its judgment, the grant of temporary authority here in question, so that REA might continue to render its express service to the shipping public. We cannot say that the Commission's exercise of its discretionary authority was, in our judgment, either capricious or arbitrary.

We need not consider plaintiff's contentions that the Commission violated congressional policy against the unrestricted entry of REA into the motor carrier field, or that its order is not supported by substantial evidence. Section 210a(a) of the Act "conceives a summary disposition of the application." Resolution of these and other issues may properly await a decision of REA's application for permanent authority. Estes Express Lines v. United States, D. C., 292 F.Supp. 842, aff'd, 394 U.S. 718, 89 S.Ct. 1469, 22 L.Ed.2d 673 (1969).

The complaint is dismissed. An appropriate order may be submitted.